IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 25-cr-0347-PAB

UNITED STATES OF AMERICA,

Plaintiff,

v.

JON CARL ANDERHUB,

Defendant.

---

# ORDER

---

This matter comes before the Court on defendant Jon Carl Anderhub's Motion to Dismiss Count Six [Docket No. 61]. The government responded. Docket No. 67. Defendant replied. Docket No. 70. Defendant argues that 18 U.S.C. § 1466A(b)(1), the statute charged in Count Six of his indictment, is "unconstitutional as applied, in violation of his First Amendment rights." Docket No. 61 at 1.

## I. BACKGROUND

In July 2024, defendant created a user account on a website on the dark web advertising itself as a community for sharing original content child pornography among members with access to young children. Docket No. 34 at 2; Docket No. 30-4 at 14-18, ¶¶ 63-70. As part of his application, defendant uploaded photos of a child that he claimed was his daughter, as well as of her underwear and bed, described his sexual abuse of the child, and represented that he possessed additional explicit photos that he was willing to share. Docket No. 34 at 2. On November 15, 2024, FBI agents executed a search warrant for evidence of child exploitation offenses, including the receipt and

possession of child pornography ("child sexual abuse material" or "CSAM"), at defendant's residence. Docket No. 67 at 1-2. Forensic examination of electronic devices seized from defendant's premises revealed three categories of CSAM: (a) images and videos depicting real, identified children engaged in sexually explicit conduct; (b) "morphed imagery"—images of defendant's step-granddaughters engaged in sexually explicit conduct that defendant created from non-obscene photos using artificial intelligence ("AI") tools; and (c) images of children engaged in sexual conduct which the government believes, but cannot verify, are "purely AI-generated" and thus portray fictional children. *Id*. at 2.

On December 3, 2025, the grand jury returned a six-count indictment related to the seized material. *See generally* Docket No. 1. As relevant here, Count Six charged defendant with violating 18 U.S.C. § 1466A(b)(1), which makes it unlawful to knowingly possess a visual depiction of any kind that depicts a minor engaging in sexually explicit conduct and that is obscene. *Id*. at 4; *see also* 18 U.S.C. § 1466A(b)(1)(A), (B). The statute clarifies that it is "not a required element" of the offense that "the minor depicted actually exist." *Id*. § 1466A(c). The statute also lists several possible "circumstances" satisfying federal jurisdiction. *Id*. § 1466A(d). Count Six alleges that the visual depiction "had been shipped and transported in interstate and foreign commerce by any means, including by computer, and was produced using materials that had been mailed, and that had been shipped and transported in interstate and foreign commerce by any means, including by computer." Docket No. 1 at 4.

On September 11, 2026, defendant moved to dismiss Count Six as a violation of the First Amendment as applied to him. *See generally* Docket No. 61. In particular,

defendant argues that the “mere possession” of obscene “virtual CSAM”—*i.e.*, obscene CSAM “produced without subjecting a child to sexual abuse”—“remains protected by the First Amendment.”[1] Docket No. 61 at 1. According to defendant, the First Amendment bestows on Americans “an established right to possess wholly irredeemable, sexual smut, so long as they d[o] so within the confines of their own home.” *See id*. at 1, 4 (citing *Stanley v. Georgia*, 394 U.S. 557 (1969)). While defendant recognizes that the Supreme Court “carved out an exception” to that supposed right allowing the government to regulate CSAM depicting real children, *see id*. (citing *Osborne v. Ohio*, 495 U.S. 103 (1990)), defendant argues that the exception exists “not because of what [CSAM] depicts, but because of the harm it inflicts on the children involved in its making.” *Id*. (citing *New York v. Ferber*, 458 U.S. 747 (1982)). He therefore argues that, once the harm to a child is removed from the material—as defendant posits occurs with virtual CSAM—so too is the government’s ability to criminalize a defendant’s possession of it within his or her home. *See id*. at 6-7. Further, according to defendant, the Supreme Court has already held that prudential concerns related to virtual CSAM—*e.g.*, “that pedophiles may use virtual CSAM to seduce children,” that viewing virtual CSAM would “increase[ the] likelihood” of the “imminent engagement in child sex abuse,” that “virtual CSAM would affect the market’s

---

[1] Defendant’s motion appears to argue that the First Amendment protects his possession of the “morphed” images of his step-granddaughters in addition to the apparently “purely AI-generated” CSAM. *See, e.g.*, Docket No. 61 at 6 (discussing how defendant’s “grandchildren suffered no greater harm from his mere possession of these photos than they did from any inappropriate thoughts that he may have also held about them”). The government’s response clarified, however, that it “does not plan to use the morphed imagery as the basis for Count Six.” Docket No. 67 at 2 n.2. Accordingly, the Court considers only whether a charge under 18 U.S.C. § 1466A(b)(1) can withstand First Amendment scrutiny where the material depicts wholly fictional children.

appetite for real CSAM," or that it "may be hard to distinguish real from virtual CSAM"—do not alter the constitutional analysis. *See id*. at 5-6 (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002)).

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) allows a party to raise "by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including "failure to state an offense." Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v). "Thus, the Supreme Court has instructed, Rule 12 permits pretrial resolution of a motion to dismiss the indictment . . . when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). "If contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Id*.

Courts may consider pretrial as-applied constitutional challenges to a criminal statute where the government does not object to timeliness. *See United States v. Harrison*, 153 F.4th 998, 1008 (10th Cir. 2025). "Courts may entertain even motions to dismiss that require resort to facts outside the indictment . . . in the limited circumstances where [1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts, and [3] the district court can determine from them that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." *Pope*, 613 F.3d at 1260 (citing *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)) (internal quotation marks omitted).

## III. ANALYSIS

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "[A] law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft*, 535 U.S. at 244. Still, the "freedom of speech has its limits." *Id*. at 245; *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942) ("The right of free speech is not absolute at all times and under all circumstances."). The Supreme Court has recognized certain categories of speech that "may be prohibited without violating the First Amendment." *Ashcroft*, 535 U.S. at 246. As relevant here, those categories include both "obscenity[][2] and pornography produced with real children." *Id*. (footnote added).

Complicating the doctrine is the fact that "[t]he Constitution extends special safeguards to the privacy of the home." *United States v. Orito*, 413 U.S. 139, 142 (1973). In *Stanley v. Georgia*, the Supreme Court addressed whether the State's "broad power to regulate obscenity" must yield to an individual's "fundamental" right to be free "from unwanted governmental intrusions into one's privacy." 394 U.S. at 564, 568. There, Georgia convicted the defendant of "knowingly hav[ing] possession of

[2] "[S]peech is obscene to the public at large—and thus proscribable—if (a) 'the average person, applying contemporary community standards[,] would find that the work, taken as a whole, appeals to the prurient interest'; (b) 'the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law'; and (c) 'the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.'" *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 472-473 (2025) (quoting *Miller v. California*, 413 U.S. 15, 24 (1973)). Defendant does not argue that the images at issue in Count Six are not obscene. *See* Docket No. 61 at 5 (describing the "question at hand" as "whether the government can lawfully prohibit someone from possessing *obscene*, virtual CSAM within his own home") (emphasis added); *see also* Docket No. 67 at 2 (describing at least some images as showing "prepubescent children being raped and with ejaculate on their faces.").

obscene matter" after seizing three eight-millimeter film reels in defendant's bedroom.[3] *Id*. at 558 (asterisk omitted). The Supreme Court concluded that "mere categorization of the[] films as 'obscene' [wa]s insufficient justification" for "reach[ing] into the privacy of one's own home" because "a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." *Id*. at 565.

Since *Stanley*, however, the Supreme Court has characterized the opinion's holding as a "narrow" one that "should not be read too broadly," *Osborne*, 495 U.S. at 108, and has repeatedly declined to extend the case's reasoning to conduct projecting beyond the confines of one's home. *See, e.g.*, *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) ("That the private user under *Stanley* may not be prosecuted for possession of obscenity in his home does not mean that he is entitled to import it from abroad free from the power of Congress to exclude noxious articles from commerce."); *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 128 (1973) ("We are not disposed to extend the precise, carefully limited holding of Stanley to permit importation of admittedly obscene materials simply because it is imported for private use only."); *Orito*, 413 U.S. at 141 ("reject[ing] th[e] reasoning" that "the right to possess obscene material in the privacy of the home . . . creates a correlative right to receive it").

The Supreme Court's determination to cabin *Stanley* to conduct *strictly* confined within the home exposes the central flaw in defendant's argument. According to defendant, the "question at hand" is "whether the government can lawfully prohibit

[3] The *Stanley* opinion does not describe the content of the films, but defendant "d[id] not argue that the films are not obscene." 394 U.S. at 559 n.2.

someone from possessing obscene, virtual CSAM within his own home." Docket No. 61 at 5. But "possessing obscene, virtual CSAM within [one's] home" is not what Count Six charges. Rather, 18 U.S.C. §§ 1466A(b)(1) and (d)(4), as charged by the government in Count Six and in contrast to the statute at issue in *Stanley*, *see* 394 U.S. at 558 n.1, prohibit the possession of obscene, virtual CSAM "that has been mailed, or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer." *Id*. § 1466A(d)(4); *see also United States v. Espinoza*, 403 F. App'x 315, 317 (10th Cir. 2010) (unpublished) (collecting cases describing how internet usage can suffice to show transportation across state lines). The interstate commerce element of Count Six accords with the "well-settled principle that Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature." *Orito*, 413 U.S. at 144 (quoting *North American Co. v. SEC*, 327 U.S. 686, 705 (1946)); *see also United States v. Baum*, 542 F. App'x 724, 727 (10th Cir. 2013) (unpublished) ("the Internet is generally an instrumentality of interstate commerce.") (quoting *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1054 (10th Cir. 2008)).

The Seventh Circuit—which appears to be the first circuit to address whether an individual can be prosecuted under 18 U.S.C. § 1466A(b)(1) for possessing obscene, AI-generated CSAM—rejected the argument that § 1466A(d)(4)'s jurisdictional requirement places the charged conduct outside of First Amendment protection. *See*

*United States v. Anderegg*, 189 F.4th 576, 585-586 (7th Cir. 2026).[4] While the Seventh Circuit panel agreed that *Stanley* "did not prohibit the government from regulating the channels of commerce," *id*. at 585 (quoting *United States v. Whorley*, 550 F.3d 326, 332 (4th Cir. 2008)), it held that "[t]he interstate-commerce requirement d[id] not change the fact that the government [wa]s using § 1466A(d)(4) to punish [defendant] for possessing obscene material in the home." *Id*. at 586; *see also* Docket No. 70 at 4 ("The passive nature of the commerce element does not transplant Mr. Anderhub's alleged conduct as occurring somewhere other than his home."). In particular, the Seventh Circuit emphasized that "the obscene materials in *Stanley* . . . almost certainly moved in interstate commerce too," yet that "did not matter to the [*Stanley*] Court." *Anderegg*, 189 F.4th at 586.

However, as noted in *United States v. Yeasley*, 2025 WL 3063712, at *3-4 (D. Idaho Nov. 3, 2025), *Stanley* distinguished cases regulating obscenity cited by Georgia on the grounds that those cases involved interstate commerce. *See* 394 U.S. at 560-562. Instead, *Stanley* emphasized that the "States retain broad power to regulate obscenity; that power simply does not extend to mere possession . . . in the privacy of [one's] own home." *Id*. at 568. Here, Count Six does not charge "mere possession" of obscene images. It charges possession of obscene images that moved in interstate commerce or were produced using materials that had moved in interstate commerce. Docket No. 1 at 4. Thus, the holding in *Stanley* does not affect the constitutionality of Count Six. *See United States v. Handley*, 564 F. Supp. 2d 996, 1001 (S.D. Iowa 2008)

---

[4] The United States filed a petition for panel or *en banc* rehearing on October 8, 2026. *See United States v. Anderegg*, No. 25-1354 (7th Cir.), Docket No. 62.

("there exists no right to receive or possess obscene materials that have been moved in interstate commerce, and that is the illegal conduct with which Defendant is charged.").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Jon Carl Anderhub's Motion to Dismiss Count Six of the Indictment [Docket No. 61] is **DENIED**.

DATED October 21, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge